**UNITED STATES of America,**
**Plaintiff,**

v.

**James Delany GARST, Defendant.**

United States District Court
S. D. New York.
April 9, 1953.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, for United States (Daniel H. Greenberg, Asst. U. S. Atty., New York City, of counsel).

Joseph G. Glass, New York City, for defendant.

LEIBELL, District Judge.

The defendant, Garst, was indicted by a Grand Jury of this Court for a violation of the Universal Military Training and Service Act, T. 50 Appendix, U.S.C.A. § 462. The indictment, No. 139/324, charged that on July 17, 1952, in this district the defendant "did unlawfully, wilfully and knowingly fail and neglect to perform a duty required of him", under the Act and the Rules and Regulations, "in that at the time and place aforesaid, the defendant did fail and neglect to take one step forward, after it had been determined that the defendant was fully qualified for induction, and which would have constituted the defendant's induction into the armed forces of the United States".

It is an offense under Section 12(a) of the Universal Military Training and Service Act of 1951 for any one to evade or refuse registration or service in the armed forces or to refuse to perform any duty required of him under the rules and regulations issued under the Act. T. 50 App. § 462(a). Regulation § 1632.14(b)(5), issued under the 1951 Act, provides that "Upon reporting for induction it shall be the duty of the registrant * * to submit to induction".

Defendant was tried before me without a jury, a jury trial having been formally waived.

The defendant was born on May 31, 1926 in Des Moines, Iowa. He later lived in the Los Angeles district in California. In September 1944 he became an apprentice seaman and worked as a clerk in the administrative personnel of the Maritime Service at Avalon, California. In July 1945 he shipped out on a voyage from Portland, Oregon, to Eniwetok Atoll and returned by way of the Hawaiian Islands. He got a medical deferment from his Local Selective Service Board because of an illness he contracted at Eniwetok. He became a student at the University of California and was a student at the University when the 1948 Selective Service Act was passed. He registered with Local Board 98 at Los Angeles on September 8, 1948, was put in Class I–A. He received a classification card to that effect on October 26, 1948, and continued his studies at the University of California.

In the summer of 1949 he applied for and received a passport to travel to Europe "on a project sponsored by the United States National Student Association". His local board granted him permission to leave the country for three months. He went to Holland, France, Switzerland, Germany, Prague, Czechoslovakia, Warsaw, Poland and Budapest, Hungary. On June 30, 1950, his local board again permitted him to go to Europe until September 10, 1950 and he went to Holland, France, Germany, Copenhagen, Denmark, Stockholm, Sweden, Helsinki, Finland and Oslo, Norway, on a similar project. On March 27, 1952, he applied for a renewal of his passport. It was part of his plan to go to Yugoslavia. The State Department disapproved his application.

On June 15, 1950, defendant was registered as a graduate student at Columbia University. In September 1950, having graduated from the University of California, he entered the School of Journalism at Columbia University as a graduate student. On September 20,

1950, his Selective Service classification was changed from Class I–A to Class II–A(S). The minutes of the meeting of Local Board 98 on September 20, 1950, show that he was put in Class II–A on that date, with no expiration date for the deferment. But the endorsement of the Board's action on the registrant's questionnaire reads: "2A to May 15, 1951". Defendant received a card (form 110) which was mailed to him by his Local Board on September 21, 1950. It stated that he had been "classified in Class II–A until May 15, 1951". This date becomes important in view of subsequent developments.

On March 8, 1951, the defendant wrote his local board a long letter seeking information. In the second paragraph he stated: "I am at present studying in the Graduate School of Journalism, Columbia University, with a 2–A classification until May 15, 1951". He asked if he could qualify during the thirty day period after the end of the semester "to find draft deferred employment", and what was "the minimum guaranteed time between the issuance of an induction order and actual induction"; also whether he could find out prior to his pre-induction physical whether he was physically unqualified for induction, because of his eyes; and finally he stated that he contemplated another trip to Europe that summer to England and Yugoslavia, from June 26th to September 14th, under the auspices of the United States National Student Association, for which he sought permission. He also volunteered the information that he was "in a position to accept a three-month job in the period before induction" and he added: "My prospective employer naturally desires to know what my draft status would be during this period (three months beginning approximately June 15)".

The "group coordinator" of the Local Board, answered his letter on March 16, 1951. He was informed that the thirty day period to find draft deferred employment applied only to graduates in the scientific field. He was also told it would be necessary for him to be re-examined physically at the expiration of his deferment and that it would be impossible to issue any travel permit until the result of his physical examination, because, if found acceptable, permission to leave the country would be denied.

On May 28, 1951, Garst wrote his Local Board that on May 1, he was "sworn into the New York National Guard, assigned to Headquarters Company, 2nd Battalion, 7th Regiment" and that Form 44 would be processed by the National Guard for forwarding to the Local Board.

On November 30, 1951, Garst again wrote his Local Board and then informed it that he had been "unable to complete" his "enlistment in the New York National Guard" because of its reluctance to enlist registrants of out-of-state local boards. The letter went on to describe a new attempt he had made to get into an organization that would enable him to obtain a deferment. He wrote the board that it had become his "Intention to enlist in the 400th Military Government, Organized Reserve Corps, U. S. Army" with headquarters in New York, and that he had been "found acceptable for enlistment" but due to the 1951 Selective Service Law the Major in charge said that he "could not initiate deferment request" and that defendant would have to do so. Accordingly Garst made the request and stated that his university degrees "most appropriately" qualified him for this work. On December 11, 1951, the clerk of the Local Board wrote Garst that "with the new regulations the Local Board cannot issue a statement granting a deferment to any registrant who enlists in a reserve unit after February 1, 1951". Not to be deterred, Garst wrote the Local Board on December 19, 1951, and asked for a written statement of the Board's policy on deferring registrants who enlist in a reserve unit after February 1, 1951. The Board advised him on January 8, 1952, that any registrant who became a member of a Reserve Component on or after July 1, 1951, "may be processed for induction when his number is reached".

On January 31, 1952, Local Board No. 98 mailed Garst an "Order to Report for Armed Forces Physical Examination" on Wednesday, February 13, 1952 (Form No. 223). On February 12, 1952 (one day before he was to report) Garst wrote his Local Board 98 in California that he be transferred for armed forces physical examination to the local board having jurisdiction over his then address, given as 315 W. 74th St. New York 21, N. Y. The request was approved February 21, 1952 and New York Local Board No. 5 at 307 West 49th Street, New York, was notified to that effect by the California Local Board No. 98, through Form No. 222 mailed February 21, 1952. Not having heard from the New York Local Board No. 5, the Clerk of Local Board 98 in California wrote the New York board on March 26, 1952, reminding it that Garst on February 21, 1952, had been transferred to the New York board for a physical examination and that "to date the physical papers have not been returned to this local board". On April 1, 1952, the New York Local Board No. 5 wrote Local Board No. 98 of California that the registrant Garst "is going to be ordered for Physical Exam. April 24, 1952". The April 1st letter was received by Local Board 98 on April 7, 1952. Garst was given a physical examination on April 24, 1952. A certificate of acceptance of Garst for induction was signed in New York, April 24, 1952 and later forwarded to the Local Board 98 in California, where it was received May 6, 1952, just twenty-five days before Garst became twenty-six years of age.

Apparently some one at Local Board 98 woke up to the fact that Garst would be twenty-six years old on May 31, 1952. Local Board 98 on May 28, 1952, with the chairman and secretary present, entered the following on the minutes: "The following Registrant's (Garst's) file was reviewed and Liability was extended to the age of 35". The questionnaire was endorsed "May 28, 1952, Liability extended to age 35."

On May 28, 1952 the Chairman of Local Board No. 98 wrote Garst as follows:

"The Local Board, in session' on May 28, 1952, upon examination of your file and the fact that you were in a deferred classification on June 19, 1951, in accordance with the Universal Military Training and Service Act, as amended June 19, 1951, you are hereby notified that on this date your liability to Military Service has been extended to the age of 35 and due to the fact that you are Vulnerable, you can expect your Induction Notice in a few days."

On May 31, 1952 Garst sent an Air Mail letter to Local Board No. 98, dated May 30, 1952, reading as follows:

"I reach my 26th birthday tomorrow. It is my understanding that selective service registrants are not liable to induction after reaching their 26th birthday.

"Pursuant to a request from my employer (Henry Gemmill, managing editor, Wall Street Journal, 44 Broad Street, New York 4, N. Y.), I am therefore requesting from you a statement concerning my liability to induction under the selective service law on and after May 31, 1952.

"Thanking you for an early reply, I am"

The letter was received by Local Board 98 on June 2, 1952. On the same day, June 2, 1952, Local Board No. 98 sent Garst an order to report for induction on June 19, 1952. On June 2, 1952, Garst sent Local Board 98 a long letter, which arrived in Los Angeles June 3, 1952, in which he called attention to the fact that the Class II-A deferment notice which was mailed to him on September 21, 1950, bore an expiration date of May 15, 1951, which was prior to June 19, 1951, the effective date of the Universal Military Training and Service Act, as amended, 50 U.S.C.A.Appendix, § 451 et seq. In the letter of June 2, 1952, Garst also referred to his letter to the Board dated

May 28, 1951 in reference to Garst's alleged enlistment in the New York National Guard on May 1, 1951, and to the Board's letter of October 30, 1951 as to his alleged membership in an organized unit of a reserve component of the armed forces. He requested that he be reclassified and put in an exempt category. He also requested an appeal and reversal of the Board's action of May 28, 1952, extending his liability to military service to age 35 on the following basis: "1) to my knowledge, I was not in a deferred classification from May 15, 1951, until the present time; and 2) any action of the Board in deferring me in any manner whatsoever from May 15, 1951, until the present was in error and had no justification". On June 19, 1952 the Board considered Garst's request and ruled that it did not warrant reopening of his classification and notified Garst through its "Group Coordinator" to that effect.

On June 9, 1952, Garst signed a form requesting that he be transferred for delivery to Local Board No. 5 in New York City. The request was approved by the Clerk of Local Board No. 5 of New York, and the Clerk of Local Board No. 98 of Los Angeles noted thereon on June 25, 1952 that "the above registrant is hereby transferred to your Local Board (No. 5) for delivery". The delivery was "for induction". On July 17, 1952, at the induction station, at Whitehall Street, New York City, Garst "refused to take one step forward when his name was called" by the Induction Officer. His refusal was "based on his belief that he had been erroneously called for induction by his Local Board". Local Board No. 98 in Los Angeles and the United States District Attorney in this district were so notified.

The above is a detailed recital of how a very clever young man, who at the trial refused to answer whether he was ever a Communist, succeeded in putting off his induction until after he had reached the age of twenty-six and avoided service in the Armed Forces. At the trial, an officer of the 107th Infantry Corps, New York National Guard, testified that according to the Corp's official records Garst never made any application for enlistment in the 107th either before or after May 1, 1951; that he never took any physical examination for enlistment; and that unless he passed his physical he could not be sowrn in; that Garst never enlisted in the Corps. A certificate of a Brigadier General of the New York State National Guard shows that no record of Garst as a member of the New York National Guard has been found. Garst testified that although he was not sworn in, he had drilled with the 107th, passed a physical and was given an oral oath on May 1, 1950.

The Major in charge of the 400 Military Government Company of the United States Army Reserve testified that Garst called upon him to seek information about recruitment, and that since Garst was still draft eligible, he, the Major, told Garst to go back to his Draft Board and that if he could assure the Major that he was not vulnerable for the draft, the Major might be interested in his services in the 400th. The 400th has no record of any application by Garst for enlistment in that outfit.

When Mr. Berg, the Chairman of Local Board 98 was on the stand at the trial—at one time he stated that there was no actual meeting of the Board on May 28, 1952, and he explained that the action taken on that day was only administrative action, what he termed "authoritative action based on a directive", and that the directive was Memorandum No. 38. Later he said that there was a meeting of the Board on May 28, 1952. But it really makes no difference whether there was a formal meeting of the Board or only administrative action by the Chairman and Secretary, because the action was invalid on either assumption.

It was the Chairman's opinion that once a registrant is given a classification he retains that classification until the Board reclassifies him. But can the Board by failing to reclassify a regis-

trant, as required by the Regulations, thereby subject the registrant to liability for service for a period nine years beyond what would have been its statutory limit if the Board had acted promptly? I do not believe that the Board's inaction can impose any such additional burden on the registrant. The Board had over a month within which to reclassify Garst after his deferment expired on May 15, 1951, and before the amendment of Section 6(h) of the Act went into effect on June 19, 1951. The Board took no action. Their inaction was contrary to the requirements of the Regulations (C.F.R. 32; 1949 Ed.) which provided:

"§ 1622.21 * * *

"(b) At the expiration of the period of a registrant's deferment in Class II–A, his classification shall be reopened and he shall be classified anew in the manner provided in Part 1625 of this chapter. The registrant may be continued in Class II–A for a further period of one year or less if such classification is warranted. The same rules shall apply when classifying a registrant at the end of each successive period for which he has been classified in Class II–A."

"§ 1625.11 *Classification considered anew when reopened.* When the local board reopens the registrant's classification, it shall consider the new information which it has received and shall again classify the registrant in the same manner as if he had never before been classified. Such classification shall be and have the effect of a new and original classification even though the registrant is again placed in the class that he was in before his classification was reopened."

The Selective Service Act of 1948, was revised and passed by the Congress and became effective June 19, 1951, C. 144, Title 1, § 1(*l*–q), 65 Stat. 75, Sec. 6(h) of the Act, T. 50 U.S.C.A.Appendix, § 456 (h) as amended, provided, in respect to various types of deferments, including a deferment for registrants engaged "in study", that "persons who are or may be deferred under the provisions of this section shall remain liable for training and services in the Armed Forces * * * under the provisions of section 4(a) of this Act (Section 454(a) of this Appendix) until the thirty-fifth anniversary of the date of their birth". Section 454 (a) provided that every male "between the ages of 18 years and 6 months and 26 years, at the time fixed for his registration * * * shall be liable for training and service in the Armed Forces of the United States".

The form 110 card, which Garst had received from his Local Board 98 on September 21, 1950, advised him that he had been put in Class II–A by his Local Board "until May 15, 1951". The list of the various actions taken by the Board in his case (as endorsed on the back of his questionnaire in the Board's files) shows the classification of Garst on September 20, 1950, as "Class 2A until May 15, 1951". But the official minutes of the Local Board's meeting held September 20, 1950 simply show a change in Garst's classification on that date from I–A, to II–A, without any statement of a time limitation attached to the II–A classification. Garst's class at Columbia University graduated on June 7, 1951.

The minutes of Local Board 98 for its January 9, 1952 meeting show that on that date Garst was reclassified from II–A(S) to I–A. There is an endorsement on the back of Garst's questionnaire under date of January 11, 1952 as follows: "Form 110 mailed". That would mean that Garst was notified on that date that he was classified as I–A on January 9, 1952. The defendant produced at the trial the notice he received of his original classification as I–A on October 26, 1948 (Ex. A) and the September 21, 1950 notice of his classification in "2A until May 15, 1951". (Ex. B). The card notice (Form 110) of his reclassification as I–A, mailed to him on January 11, 1952, was not offered as an exhibit, but it is referred to by Garst in his letter to the Board

dated June 2, 1952, and it is not questioned that he received that notice.

■ The amendment of Section 6(h) of the Act went into effect June 19, 1951. One of the important issues in this case is this: "Was Garst properly in Class II–A on June 19, 1951?" The government contends that the official minutes control. The defendant's attorney argues that the Government is bound by the statement on the card, Form 110, which it sent Garst on September 21, 1950. All three members of the Local Board 98 are recorded in the official minutes as having voted for Garst's II–A classification on September 20, 1950. But the card, Form 110, which Garst received, fixing May 15, 1951 as the expiration date of his II–A classification is signed by one member of the Board (Daniel Feder) and the endorsement on the questionnaire "2A to May 15, 1951" is initialed by the Chairman (Milton Berg) and by another person, probably the third member, M. O. Michelson, The Secretary. That would indicate that all three members of the Board knew of the May 15, 1951, expiration date, even though it was not in the official minutes.

When the Local Board on January 9, 1952 reclassified Garst as I–A, the two members present voted for the reclassification. They took no action at that time, under the June 19, 1951 amendment to Section 456(h), to rule that under that amendment Garst was liable to be called to military service until the age of thirty-five.

The fact that Local Board No. 98 took no action to extend Garst's liability to service until three days before he reached the age of twenty-six leads one to believe that the Board's action on May 28, 1952, was taken "in extremis" because they then realized that the registrant Garst had not yet been inducted and would be twenty-six years old in three days. The Board's May 28th action was a makeshift, to keep some hold on Garst.[1]

■ No matter what the Court may think of the defendant's conduct, he has not committed the offense charged in the indictment. He was not subject to induction under the law, on July 17, 1952, when he refused to be inducted because he was over twenty-six years of age at the time; and he was not liable for service until he was thirty-five, because Local Board 98's ruling to that effect on May 28, 1952, was contrary to the Act and to the Regulations and was invalid.[2] The evidence in this case does not warrant a conviction of the offense charged in the indictment. The defendant's motion for a judgment of acquittal, made at the close of the evidence under Rule 29, Federal Rules of Criminal Procedure, 18 U.S.C.A. is granted. The Clerk will prepare and submit a judgment accordingly.

1. A further question might be presented if Garst's deferment, his II–A(S) classification, extended beyond June 19, 1951. Does the June 19, 1951 amendment to Sec. 6(h) of the Act apply only to those who are in the deferred classification when they reach their twenty-sixth birthday? The House managers in their conference report on the 1951 Bill indicated some such view. See U. S. Code Congressional and Administrative Service, 82nd Congress, First Session, 1951, Vol. 2 at page 1513. But the language of the amendment contains no such specific statement. The National Headquarters of the Selective Service System at Washington, D. C. in Memorandum No. 38 issued on October 30, 1951 [paragraphs 3 and 3(g)] does not apply the House managers interpretation of Sec. 6(h). The Memorandum (No. 38) follows the language of the Act. However, the historical note on subsection (h) at the end of Sec. 456 of T. 50 U.S.C.A.Appendix, states in effect that the amendment was intended "to permit the induction of persons now deferred until the thirty-fifth anniversary of their birth should the basis for deferment terminate after their 26th birthday". The note is probably based on the House manager's report.

2. I have not cited any court decisions in this opinion, because this appears to be a case of first impression.