**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Alexander M. LYBRAND, Defendant.**

**No. 67 CR 275.**

United States District Court
E. D. New York.

Dec. 12, 1967.

Koozman & Hartman, New York City, for defendant; George H. Hartman, New York City, of counsel.

## OPINION AND ORDER

WEINSTEIN, District Judge.

Defendant, Alexander M. Lybrand, was classified a conscientious objector opposed to participation in war in any form (Class I–O). He was ordered by his local draft board to report for civilian work in lieu of induction into the Armed Forces. Having failed to report, he was indicted and tried by the Court for knowingly failing to comply with his local draft board's order. 50 U.S.C. App. §§ 456(j), 462(a).

At the trial the government called as its only witness the Chief Clerk of the defendant's local draft board. Defendant's Selective Service file was marked for identification and fourteen of the documents in the file were introduced. These documents, together with the Chief Clerk's testimony with respect to the practice of the local board and instructions given to defendant, constituted the government's case.

Defendant introduced no evidence. He moved for a judgment of acquittal specifying sixteen separate grounds, including denial of the right to counsel in his appearances before the local board, incomplete and misleading advice given by the local board in response to his written inquiry, and absence of proof that defendant was called to civilian work in lieu of induction in the order prescribed by the Selective Service regulations. These contentions came as no surprise to the government which had been furnished with defendant's trial brief before any evidence was received; it contained authority and argument in favor of each of defendant's grounds for dismissal.

For the reasons stated below, the Court holds that the government was required to prove that defendant was ordered to report at the time he "would have been ordered to report for induction if he had not been classified in

Joseph P. Hoey, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., for plaintiff; Michael Rosen, Asst. U. S. Atty., of counsel.

Class I–O." 32 C.F.R. § 1660.20. Because failure to establish this element of the prosecution's case requires granting the motion for a judgment of acquittal it is unnecessary to consider defendant's other contentions.

### Power of Court to Question Lawfulness of Order by Local Board

■ A preliminary issue is whether this Court is foreclosed from deciding if the local draft board complied with the Selective Service Regulations in ordering the defendant to report for induction.

Prior to the 1967 amendments, the statute governing the draft provided that:

"The decisions of such local boards shall be final, except where an appeal is authorized and is taken * * *. The decision of * * * appeal boards shall be final in cases before them on appeal unless modified or changed by the President * * * and the determination of the President shall be final." Universal Military Training and Service Act, 50 U.S.C. App. § 460 (b) (3).

The Supreme Court has interpreted this provision as authorizing limited judicial review. In the leading case of Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), the Court held that a showing by the defendant that his classification was without "basis in fact" was sufficient to deprive the local board of jurisdiction and constituted a defense to a prosecution for failing to comply with its order.

Following the rationale that the local board loses jurisdiction when it denies substantial rights accorded by the regulations, trial courts refused to convict and appellate courts reversed convictions where there were prejudicial errors in processing a registrant. Many of these cases involved irregularities in the classification process. See, e. g., Olvera v. United States, 223 F.2d 880 (5th Cir. 1955) (failure of board to give adequate reason for discretionary refusal to reopen defendant's classification); Knox

v. United States, 200 F.2d 398 (9th Cir. 1952) (failure to classify defendant anew after a personal appearance). But the doctrine was not limited to classification procedures. Thus, in United States v. Mohammed, No. 57 CR 532 (N.D.Ill. 1958), described in United States v. Mohammed, 288 F.2d 236, 240 (7th Cir. 1961), a verdict of guilty was set aside and a new trial ordered because the court found that the order of induction was signed by the clerk of the local board and defendant's file contained no indication that the order was authorized by the board. And in United States v. Garst, 132 F.Supp. 93 (S.D.N.Y.1953), the court ruled that the local board's induction order was invalid and directed a judgment of acquittal where it appeared that defendant was over twenty-six years of age when the order was finally issued and that the board was in error in extending defendant's liability to the draft until age thirty-five.

The 1967 amendments exclude judicial review of classifications unless there is "no basis in fact" for the classification. The amendment reads as follows:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided*, That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant." 50 U.S. C. App. § 460(b) (3), as amended, 81 Stat. 104.

The question posed is whether the 1967 legislation can be interpreted to foreclose the defense that the board acted beyond its authority in issuing the order, defiance of which is the basis of

this prosecution. To put the example used by the Supreme Court in *Estep,* does the new amendment mean that if a man from Oregon were drafted by a Pennsylvania draft board, he would be precluded from raising this point in defense to a prosecution for failure to obey the draft order?

The legislative history of this provision gives little indication that it was designed to achieve such an extreme result. Relevant Congressional reports suggest that what was sought to be avoided was routine review by the courts of classification orders. The House Report does not even mention the language relating to the scope of review. H. Rep. No. 267, 90th Cong., 1st Sess. (1967), 1967 U.S.Code Cong. & Admin.News, pp. 1464, 1489. It indicates only that "[t]he committee was disturbed by the apparent inclination of some courts to review *classification action* * * * before the registrant had exhausted his administrative remedies." Id. (Emphasis added.) The only other mention of the provision in the committee reports was in the Conference Report which states that:

> "there shall be *no judicial review of classification* except as a defense to a criminal prosecution after a person has exhausted his administrative remedies and presented himself for induction. This language also provides that any such judicial review shall extend only to whether there is any basis in fact for the classification assigned." Conf.Rep. No. 346, 90th Cong., 1st Sess. (1967), 1967 U.S.Code Cong. & Admin.News, pp. 1508, 1516–1517. (Emphasis added.)

There is no indication that Congress was concerned with jurisdictional errors involving matters other than the classification of the registrant. On the contrary, it appears that Congress was attempting to state a standard for scope of judicial review—of classifications—narrower than the substantial evidence test. Cf. Dickinson v. United States, 346 U.S. 389, 399, 74 S.Ct. 152, 159, 98 L.Ed. 132 (1953) (Jackson, J., dissenting) ("It will not do for the Court as in Estep to say

on the one hand that the board's action is not subject to 'the customary scope of judicial review' and that 'the courts are not to weigh the evidence,' and then on the other to strike down a classification because no affirmative evidence supporting the board's conclusion appears in the record."); Davis, Administrative Law § 23.08, at 332 (1958) ("The search for a formula which will meaningfully make the scope of review narrower than what is provided by the substantial-evidence rule has not yet met with success"). But cf. Changes in the Draft: The Military Selective Service Act of 1967, 4 Columbia Journal of Law and Social Problems, 120, 156–159 (1968) (Only purpose of amendment was to overrule Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 (2d Cir. 1967) which permitted review of classification of students in a civil action where students asserted that their First Amendment Rights were violated). The language of the statute and its legislative history point to the conclusion that Congress left untouched the power of the courts to consider—in a criminal prosecution—jurisdictional errors other than those dealing with classification.

*Illegality of Order to Report*

The Selective Service Regulations expressly provide that an order to a conscientious objector to report for civilian work *"shall not be issued* prior to the time registrant would have been ordered to report, if he had not been classified in Class I–O." 32 C.F.R. § 1660.20 (emphasis added). Concededly, in the present case, the government failed to offer proof that this provision was complied with by the defendant's local board.

█ Having concluded that defendant is not foreclosed from asserting the board's lack of jurisdiction as a defense, it must be determined whether, assuming non-compliance, this irregularity would establish that defense. It seems clear that not every departure by a local board from standard practice, not each minor slip, deprives a local board of jurisdiction and invalidates its order. See, *e. g.,* United States v. Lawson, 337 F.2d 800,

812–813 (3d Cir.), cert. denied, 380 U.S. 919, 85 S.Ct. 913, 13 L.Ed.2d 804 (1964) (signing an order by rubber stamp violated regulations but did not void order to report for civilian work). The issue presented is whether this departure from law is so serious as to be characterized as "jurisdictional" under *Estep*.

■ The history and policy of the draft law strongly suggest that violation of the order of call regulation is of sufficient consequence to warrant a finding that the local board exceeded its jurisdiction. Intertwined in this provision are two central objectives of the draft law: (1) that men be called for induction according to a specified order, and (2) that the burdens and opportunities of a conscientious objector for serving his country be as equivalent as possible to service in the Armed Forces.

### Order of Call-Up

The order in which men are called to duty is specifically set out with detailed precision allowing a minimum of discretion in local boards. Subdivision (a) of section 1631.7 of title 32 of the Code of Federal regulations provides:

" * * * Such registrants . . . shall be selected and ordered to report for induction in the following order:

(1) Delinquents who have attained the age of 19 years in the order of their dates of birth with the oldest being selected first.

(2) Volunteers who have not attained the age of 26 years in the sequence in which they have volunteered for induction.

(3) Nonvolunteers who have attained the age of 19 years and have no [sic] attained the age of 26 years and who (A) do not have a wife with whom they maintain a bona fide family relationship in their homes, in the order of their dates of birth with the oldest being selected first, or (B) have a wife whom they married after the effective date of this amended subparagraph and with whom they maintain a bona fide family relationship in their homes, in the order of their dates of

birth with the oldest being selected first.

(4) Nonvolunteers who have attained the age of 19 years and have not attained the age of 26 years and who have a wife whom they married on or before the effective date of this amended subparagraph and with whom they maintain a bona fide family relationship in their homes, in the order of their dates of birth with the oldest being selected first.

(5) Nonvolunteers who have attained the age of 26 years in the order of their dates of birth with the youngest being selected first.

(6) Nonvolunteers who have attained the age of 18 years and 6 months and who have not attained the age of 19 years in the order of their dates of birth with the oldest being selected first.

In selecting registrants in the order of their dates of birth, if two or more registrants have the same date of birth they shall, as among themselves, be selected in alphabetical order."

This order is a matter of substance central to the present statutory scheme of the selective service system. In recent months the issue of order of call has engaged the attention of the President, the Congress, and the people of this country. Among the major questions debated in the passage of the Military Service Act of 1967 were by what process and in what order men should be called. See H. Rep. No. 267, 90th Cong., 1st Sess. (1967), 1967 U.S.Code Cong. & Admin. News, pp. 1476–1481, 1486. All agreed that some clear system for determining order of selection must be maintained. Compare In Pursuit of Equity, Who Shall Serve When Not All Serve, Report of the National Advisory Commission on Selective Service, 6, 37–39 (1967) (men should be selected by national lottery) with H. Rep. No. 267, 90th Cong., 1st Sess. (1967), 1967 U.S.Code Cong. & Admin.News, pp. 1476–1481. See also Conf.Rep. No. 346, 90th Cong., 1st Sess. (1967), 1967 U.S.Code Cong. & Admin.News, pp. 1510–1511 (President

should be given authority to reverse the order of call-up, but not to install a lottery without the approval of Congress). See generally Changes in the Draft: The Military Selective Service Act of 1967, 4 Columbia Journal of Law and Social Problems, 120, 142–148(1968).

Even the most casual reading of the regulation on ordering conscientious objectors to report for alternative service reveals the great importance attached to the order of call of conscientious objectors. Each of the four subsections of section 1660.20 of title 32 specifically provides that men in Class I–O be called at the same time they would have been if they had been drafted. The section reads as follows:

"§ 1660.20 Determination of type of civilian work to be performed and order by the local board to perform such work.

(a) When a registrant in Class I–O has been found qualified for service in the Armed Forces after his armed forces physical examination or when such a registrant has failed to report for or to submit to armed forces physical examination, he shall, within ten days after a Statement of Acceptability (DD Form No. 62) has been mailed to him by the local board or within ten days after he has failed to report for or submit to armed forces physical examination, submit to the local board three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1, which he is qualified to do and which he offers to perform in lieu of induction into the Armed Forces. If the local board deems any one of these types of work to be appropriate, it will order the registrant to perform such work, *but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I–O unless he has volunteered for such work.*

(b) If the registrant fails to submit to the local board types of work which he offers to perform, or if the local board finds that none of the types of work submitted by the registrant is appropriate, the local board shall submit to the registrant by letter three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in § 1660.1 which it deems appropriate for the registrant to perform in lieu of induction. The registrant, within ten days after such letter is mailed to him by the local board, shall file with the board a statement that he either offers to perform one of the types of work submitted by the board, or that he does not offer to perform any of such types of work. If the registrant offers to perform any one of the three types of work, he shall be ordered by the local board to perform such work in lieu of induction, *but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I–O, unless he has volunteered for such work.*

(c) If the local board and the registrant are unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the State Director of Selective Service for the State in which the local board is located, or the representative of such State Director, appointed by him for the purpose, shall meet with the local board and the registrant and offer his assistance in reaching an agreement. The local board shall mail to the registrant a notice of the time and place of this meeting at least 10 days before the date of the meeting. If agreement is reached at this meeting, the registrant shall be ordered by the local board to perform work in lieu of induction in accordance with such agreement, *but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been*

*classified in Class I–O, unless he has volunteered for such work.*

(d) If, after the meeting referred to in paragraph (c) of this section, the local board and the registrant are still unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the local board, with the approval of the Director of Selective Service, shall order the registrant to report for civilian work contributing to the maintenance of the national health, safety, or interest as defined in § 1660.1 which it deems appropriate, *but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I–O, unless he has volunteered for such work.*" (Emphasis added.)

*Alternative Service Equivalent to Service in the Armed Forces*

█ The requirement that registrants who are classified I–O must do "civilian work in the national interest" in lieu of induction is designed to equate—to the extent practicable—their burdens and responsibilities with those of men inducted into the Armed Forces. See Sibley and Jacob, Conscription of Conscience 111 (1952) ("This program was designed neither to afford an easy berth to the c. o. for the duration of the war, nor to subject him to the arduous labors of the chain gang."). This purpose becomes apparent when the structure of the classification system with respect to conscientious objectors is considered.

Not all conscientious objectors are excused from military service. Those who object only to participation in actual combat are classified in Class I–A–O, as available for military service in noncombatant roles. 32 C.F.R. § 1622.11(a). These men are drafted, but not given combat training; they are assigned to duties such as those of a field medical aide.

Only men who are opposed to participation in military activities of any kind are given I–O status. 32 C.F.R. § 1622.14(a). By excusing these men from all service in the Armed Forces, but requiring them to work for a period of two years in alternative services—the same period served on active duty by draftees—the administrative scheme attempts both to respect the beliefs of these men and to insure that the source of their convictions is sincere opposition to war, not a desire to avoid work in our nation's interest.

A corollary to the principle that a conscientious objector should perform service in lieu of that he would have performed had he been drafted is that if he would not have been drafted he should not have to perform alternative service. This corollary is embodied in section 1660.20 both in the requirement that a registrant in Class I–O be called for civilian work at the same time he would have been drafted and in the provision which allows a local board to order a registrant in Class I–O to do civilian work only after he "has been found qualified for service in the Armed Forces after his armed forces physical examination." The former requirement—of same order of call—is designed to place the I–O registrant under the same liability to call and at the same time in life as other registrants. The latter condition—that only men found fit for duty in the Armed Forces may be called for civilian work in lieu of induction—is obviously not intended to insure that the registrant is physically fit to perform his assigned civilian work. Such work is unlikely to require the maximum effort of military duty in its most arduous forms; the regulation guarantees that the conscientious objector need not serve in a nonmilitary job if he would not have been called to serve in the Armed Forces.

Thus the goal of equivalent service and responsibility is central to the administrative scheme. The conclusion seems inescapable that the failure of a local board to call conscientious objectors in the order specified in the regulations is of sufficient significance to

constitute a jurisdictional defect which renders void an order to report.

### Element of the Offense

 In the present case, neither side introduced evidence on whether or not the local board complied with the regulations. It thus becomes necessary to decide who had the burden of proof on this issue. In making this decision, the first question must be whether proof of a proper order of call is an element of the offense, for in a draft case, as in any other criminal case, the burden is on the prosecution to prove each element of the offense beyond a reasonable doubt. Franks v. United States, 216 F.2d 266, 269 (9th Cir. 1954) ("In a criminal prosecution of this kind, the burden is upon the Government to establish the validity of the induction order * * *"); Zuziak v. United States, 119 F.2d 140, 142 (9th Cir. 1941) ("The government had the burden of proving that appellant was within the prescribed age limits."). Cf. Keene v. United States, 266 F.2d 378, 380 (10th Cir. 1959) ("it is, to be sure, incumbent upon the government to prove a valid classification as an essential element of the offense"); A.L.I., Model Penal Code, § 1.12(1) (Prop.Off.Draft 1962) (burden of proof on each element of the offense on the prosecution).

Since this is a non-jury case, we need not consider whether, in a jury trial, order of call would be an issue decided by the court. Cf. Cox v. United States, 332 U.S. 442, 452–453, 68 S.Ct. 115, 92 L.Ed. 59 (1947) (whether classification has any basis in fact is question for Court); Reed v. United States, 205 F.2d 216, 218 (9th Cir.), cert. denied, 346 U.S. 908, 74 S.Ct. 238, 98 L.Ed. 406 (1953) (whether defendant had a fair hearing before local board was for the Court not the jury).

In determining whether the order of call is an element of the crime charged, the American Law Institute's Model Penal Code furnishes useful guidance. The Code defines "element of an offense" to include both elements showing "culpability" and those establish-ing lack of justification of the defendant. It reads as follows:

" 'element of an offense' means (i) such conduct or (ii) such attendant circumstances or (iii) such a result of conduct as:

(a) is included in the description of the forbidden conduct in the definition of the offense;

(b) *establishes the required kind of culpability;*

(c) *negatives an excuse or justification for such conduct;*

(d) negatives a defense under the statute of limitations;

(e) *establishes jurisdiction or venue.*
A.L.I., Model Penal Code, § 1.13(9) (Prop.Off.Draft 1962) (emphasis added).

The burden of proof on each element of the offense is placed by the Code on the prosecution. A.L.I., Model Penal Code, § 1.12(1) (Prop.Off.Draft 1962). The only exception to this rule is that the burden is shifted to defendant to prove all affirmative defenses. A defense is defined as affirmative when it is so designated in the statute defining the crime or "when * * * it involves a matter of excuse or justification *peculiarly within the knowledge of the defendant* on which he can fairly be required to adduce supporting evidence." A.L.I., Model Penal Code, § 1.12(3) (Prop.Off. Draft 1962) (emphasis added).

██ Applying the principles of the Code, it seems apparent that proof of proper order of call is an element of the offense. As already noted, if defendant is called out of turn, the order of induction lacks jurisdictional basis and he is justified in refusing to obey it. Thus, improper order of call would be a matter of "excuse of justification." Since proof of improper order of call is not made an affirmative defense by the statute (50 U.S.C. App. §§ 456(j), 462(a)), and inasmuch as proof concerning whether defendant was called in order is peculiarly within the knowledge of the prosecution, not the defendant, the matter would not

be considered an affirmative defense under the Code.

■ Considering the importance of the order of call to the draft system and the ease with which compliance with the regulations can be proved—all the prosecution had to do was to have the clerk, who testified to virtually every other step in defendant's processing, testify that defendant was called in order—it seems just that the burden should rest on the prosecution. As the draftsmen of the Code point out: "[u]nless the matter is peculiarly within the defendant's knowledge, there is no reason why the prosecution should not make its proof in the first instance." A.L.I., Model Penal Code, Tent. Draft No. 4, p. 112 (1955).

This conclusion is in accord with the one case on the subject in which the issue was timely raised at trial. In United States v. Rhodes, Criminal No. 41112 (N. D.Cal. January 26, 1967), the court held: "failure to prove that this man was called up in sequence is a fatal defect in proof." Cf. United States v. Benford, No. 6474 Crim.T. (S.D.Fla. April 1, 1958) (failure of government to prove that institution to which defendant was ordered to report for civilian work in lieu of induction was a proper one required judgment of acquittal).

Greer v. United States (378 F.2d 931, 933 (5th Cir. 1967)) is not persuasive authority to the contrary. There an appellate court held that a conviction in which no proof on the order of call was introduced could stand where *"no such objection was made* to the board nor *in the lower court."* Ibid (emphasis added). As already noted, in the instant case the issue of order of call was relied upon by the defendant at the trial.

### Presumption of Regularity

■ The government concedes that it has offered no proof on the order in which defendant was called. It has not requested the court—nor furnished any material from which it would be possible —to take judicial notice of the fact that persons of defendant's age group were being called by this local board. It seeks to satisfy its burden solely by reliance on a "presumption of regularity" of the proceedings of a local draft board. See Greer v. United States, supra; Keene v. United States, 266 F.2d 378 (10th Cir. 1959).

■ There is grave doubt about the propriety and the constitutionality of presuming an essential element of a serious crime. Cf. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (presumption of intent would be unconstitutional); United States v. Tot, 319 U.S. 463, 469–470, 63 S.Ct. 1241, 1246, 87 L.Ed. 1519 (1943) ("The argument from convenience is admissible only where the inference is a permissible one, where the defendant has more convenient access to the proof, and where requiring him to go forward with proof will not subject him to unfairness of hardship"); A.L.I., Model Penal Code, Tent. Draft No. 4, Comments to § 1.13 [renumbered 1.12] at p. 115 (1955) (presumption should not be used to make a matter an affirmative defense); A.L.I., Model Penal Code, Tent. Draft No. 4, Comments to §§ 2.02, 2.05 (1955) (strict liability is an inappropriate basis for application of serious criminal sanctions). The learning on presumptions and strict criminal liability teaches us that the burden of exculpation with respect to an essential element of a crime cannot be placed on defendant when (1) the element is central to the activity sought to be outlawed, (2) the penalty is severe, and (3) the proof should be readily available to the prosecution. A.L.I., Model Penal Code, Tent. Draft No. 4, Comments to § 2.05 at p. 140 (1955) ("This section makes a frontal attack on absolute or strict liability in penal law, whenever the offense carries a possibility of imprisonment. * * * The liabilities involved are indefensible in principle, unless reduced to terms that insulate from the type of moral condemnation that is and ought to be implicit when a sentence of imprisonment may be imposed."); Wechsler, The Challenge of a Model Penal Code, 65

Harv.L.Rev. 1097, 1109 (1952) ("where the penalty is light, where knowledge normally obtains and where a major burden of litigation is envisioned, there may be some practical basis for a stark limitation of the issues; and large injustice can seldom be done. * * * [W]here any major sanction is involved * * * absolute penal liability is an abuse."); Packer, Mens Rea and the Supreme Court, 1962 Sup.Ct.Rev. 107, 148 ("the transfer of money from one pocket to another is one thing, and the judgment of community condemnation is quite another. So long as that sanction is resorted to, moral blameworthiness should be the indispensable precedent to its application. Whether it is a sufficient condition needs more thought, but that it is a necessary condition cannot be seriously doubted"). See also H. M. Hart, The Aims of the Criminal Law, 23 Law & Contemp.Prob. 401, 429–436 (1958).

All three of these requirements are present with respect to the order of call. An essential element of the draft system, reiterated in the regulations, public debate and legislative history, is that draftees—including conscientious objectors—be called in regular order unless a departure from that order be justified by the regulations, statutes, or unavoidable delays and inefficiencies of the system itself. The penalty is severe not only because it can result in up to six years of custody under the Federal Youth Corrections Act (18 U.S.C. § 5017 (c) (d)), but because of the life-long stigma that the term "draft dodger" carries. Finally, proof of the order of call is not normally available to the defendant, but is readily available to the prosecution.

*Offer to Reopen Case*

 In a final attempt to overcome its failure of proof, the prosecution asks that the court reopen this case to permit introduction of evidence on the order of call-up. No special circumstances justify such unusual action.

The government had notice from the outset of the trial that defendant would press this point. If defendant was being ordered to report no earlier than others, the proof should have been available from the local board's file or from the board's Chief Clerk. Both were in court.

In granting a motion of acquittal, the court does not immunize defendant from his obligation to report for civilian work or from prosecution if he fails to perform his duty. Defendant is twenty-three years old. He has been classified I–O by his local draft board and has passed the physical examination. It would appear that nothing prevents his local board from finding that he is of the age that he "would have been ordered to report if he had not been classified in Class I–O" and from issuing another order to report for civilian work.

The motion for judgment of acquittal is granted.

So ordered.