Richard D. YATES, Jr., Defendant,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 7117.

United States Court of Appeals
First Circuit.

Heard Oct. 1, 1968.

Decided Dec. 13, 1968.

Rehearing Denied Feb. 14, 1969.
See 407 F.2d 50.

Robert S. Frank, Jr., Boston, Mass., by appointment by the Court, with whom Choate, Hall & Stewart, Boston, Mass., was on brief, for appellant.

John Wall, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., and Edward F. Harrington, Asst. U. S. Atty., were on brief, for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant, one Yates, appeals his conviction for refusal to submit to induction into the armed forces. In October 1963 shortly after his eighteenth birthday, defendant registered with Local Board 15 in Walterboro, South Carolina, the Selective Service Board that had jurisdiction over him. Subsequently he moved to Boston where he now lives. In 1966 when classified 1-A and ordered to report for induction defendant appeared at Local Board 34 in Roxbury, Massachusetts, and requested transfer of induction to Boston.[1] This request was granted and shortly thereafter the Massachusetts Board ordered him to report for induction. Yates then applied to his South Carolina Board for reclassification as a conscientious objector.[2]

Although this reclassification was denied, it did result in cancellation of the outstanding induction order. In May 1967 the South Carolina Board again ordered the defendant to report for induction and he requested and was granted another transfer to Boston for induction. Shortly thereafter the Massachusetts Board ordered him to report for induction in Boston on June 14, 1967. He reported but refused to submit to induction. Defendant was indicted and after trial by jury was found guilty as charged and sentenced.

On appeal he questions the sufficiency of the indictment[3] and also complains

---

1. In 1965 when defendant was ordered by the South Carolina Board to report for a physical examination he requested and was granted a transfer to Boston for the purpose of taking this examination.

2. It appears that at various times between August 1965 and May 1967 Yates informed the South Carolina Board that he was a member of the religious sect known as the Black Muslims. We note, however, that when classified 1-A in 1966 he did not appeal.

3. The indictment, which is in one count, reads as follows:

"On or about June 14, 1967, at Boston, in the District of Massachusetts, RICHARD D. YATES, JR., of the Dorchester section of Boston, in said District, did unlawfully, knowingly and wilfully fail and neglect to perform a duty required of him under and in the execution of the Universal Military Training and Service Act and the rules, regulations and directions duly made pursuant thereto, particularly

that the trial court erred in refusing to grant his motion for judgment of acquittal.

Relying principally on Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), defendant contends that the indictment is defective in that (1) nowhere in it is his liability for induction alleged; (2) it does not charge him with a knowing failure to submit to induction; (3) the phrase "his local draft board" is fatally ambiguous in the context of this case and (4) the indictment fails to allege that he was called in proper order by his South Carolina draft board.

In *Russell* the defendant was convicted of refusal to answer questions of a congressional investigating committee. The indictment was found defective because it did not specify the matters under investigation. Throughout his discussion of the indictment defendant cites *Russell* for the proposition that in addition to setting out the elements of the offense charged the indictment must allege specifics.

■ This proposition must, however, be read in relation to the indictment's primary goal—that defendant be apprised with reasonable certainty of the nature of the charge against him. It also must be read in light of the facts in *Russell*. There the lack of explicitness went to the very core of a very complex factual situation; not so in the instant case.

■ Coming now to defendant's first two challenges, we think the indictment, although somewhat general, sufficiently alleges (1) the defendant's liability for induction and (2) that the defendant knowingly failed to submit to induction. With regard to the first, he could hardly "neglect to perform a duty required of him" if none were required. As to the second, the words "unlawfully, knowingly and wilfully" which appear in the beginning of the indictment are incorporated by reference into the specific portion of it.

■ Defendant's third and fourth challenges to the sufficiency of the indictment also constitute two of his three grounds for judgment of acquittal. He complains that the phrase in the indictment "his local draft board" is ambiguous in that it does not identify which order of which draft board created the duty to submit to induction; that this phrase can only refer to the South Carolina Board, whereas the government's proof showed that defendant was ordered to report for induction by the Massachusetts Board, thus creating a prejudicial variance between the indictment and the proof. These contentions are also without merit. The simple common sense of the matter is that when the defendant was charged with failure to obey an order of his draft board to report for induction on June 14, 1967, there can be no doubt that he knew very well which order and which board was meant. Even though three previous induction orders had been issued, all of them bore a much earlier date and each of them had been cancelled. By no stretch of imagination could the indictment be regarded as referring to any of these cancelled orders. It was at defendant's own request that he acquired a Local Board of Transfer for induction purposes. The fact that he also had a Local Board of Origin in South Carolina might in some highly theoretical sense make the phrase "his local draft board" ambiguous, but in context there certainly is no practical ambiguity.[4] We fail

---

32 Code of Federal Regulations 1632.14, in that he did fail and neglect to comply with an order of his local draft board to submit to induction into the armed forces of the United States; in violation of Title 50, Appendix, United States Code, Section 462."

4. This order issued by the Massachusetts Board on May 29, 1967, reads in pertinent part as follows:
"GREETING:
Having heretofore been ordered to report for induction by Local Board No. 15, State of South Carolina, Hotel

to see how in the circumstances of this case the omission of the term "of transfer" from the indictment in any way misled or prejudiced this defendant.

We are not persuaded by defendant's contention that the indictment must allege and the government must affirmatively prove that he was called for service in proper order. The indictment does not have to allege this specifically; it is included in the general allegation that defendant "did unlawfully * * * neglect to perform a duty required of him under * * * the Universal Military Training and Service Act and the rules, regulations and directions duly made pursuant thereto * * *."

In considering the nature of the burden on the government as to proof of proper "order of call," we acknowledge the differing approaches of United States v. Lybrand, 279 F.Supp. 74 (E.D. N.Y.1967); Greer v. United States, 378 F.2d 931 (5th Cir. 1967) and United States v. Sandbank, 403 F.2d 38 (2d Cir. 1968)[5]. Greer, the first of the trilogy, (if we except the unreported decision, United States v. Rhodes, Criminal No. 41,112, N.D.Cal. Jan. 26, 1967) simply held that in the absence of any evidence of failure to follow proper order of call, the gap is filled by a presumption of regularity. Lybrand denominated order of call an "element of the offense" and held that, there being no affirmative proof, the government had not made out a case.[6] In Sandbank the Second Circuit held that "the better rule is to require the registrant to show that the call up was invalid as part of his defense * * * *"[7]

This impels us to consider the extent of the government's burden and the manner in which it should be expected to sustain that burden, consistent with the rights of the defendant, in the light of such factors as the access to proof by both sides, its criticality and administrative limitations.

To begin with, adherence to the order of call regulation, while not unimportant, does not seem to us to be of the magnitude of the jurisdictional defects

---

Hayne, W. Washington Street, Walterboro, which is your Local Board of Origin, and having been transferred upon your own request to Local Board No. 34, State of Massachusetts, 70 Warren Street, Roxbury, which is your Local Board of Transfer, for delivery to an induction station, you will, therefore, report to the last-named Local Board at 70 Warren Street, Roxbury, Massachusetts on June 14, 1967 at 7:00 A.M."

5. While Sandbank overruled Lybrand, defendant's argument below admittedly without knowledge of Sandbank, strenuously urged that we should follow it as sound law. We are unwilling to dismiss its reasoning solely because it has been overruled in another circuit.

6. Characterizing violation of the order of call regulation as jurisdictional under Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), the court concluded that proper order of call was not only an element of the offense but such an "essential element" that there was grave doubt as to the propriety and constitutionality of presuming it in the absence of contrary evidence, citing Mori-

sette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), 279 F. Supp. at 82. The court distinguished Greer as a case where order of call was not raised at trial, noting that the government had notice at the outset from defendants' trial brief that this point would be pressed. But if order of call is such an essential element of the offense, we doubt that failure to raise it below would be fatal.

7. In a footnote the court said that while it hesitated "to presume a vital element of the proof, applying the presumption here results merely in permitting the government to present its case in chief free of a technical nicety. The defense may easily put this detail in issue." With so much—and with the result in Sandbank—we are in accord.

The court continued with the following: "Assuming arguendo that proof of an improper call-up order would constitute a valid defense, we merely decide that the government need not take the initiative in raising the issue." We respectfully differ in that we do not characterize order of call as a defense for the reasons set forth in Lybrand, supra, 279 F.Supp. at 78.

with which *Estep* was concerned. In a large draft board area perfect proof that no person exists who should have been drafted before the defendant but was not, would be improbable. On the other hand, there exists the possibility that capricious or arbitrary action was taken by a local board; a defendant has little opportunity to obtain proof of discrimination; and there is no chance or procedure to review this issue before the agency. There ought, therefore, to be a means of exerting constant pressure on the local boards to adhere faithfully to the order of call regulation.

There is no difficulty in the perhaps rare case where a defendant can produce evidence of a person who should have been called before him but was not. In such a case, the government cannot disprove a leak in a bucket simply by showing most of it was tight. But where the defendant lacks any such proof, his only recourse is to examine the clerk of the local board. This may not conclusively establish the absence of any violation of the regulation but, since the clerk must testify in any case to the validity of the order to report, there is little extra burden on the government to have him prepared to testify on order of call.[8]

■ If, however, the order of call point is not raised before trial and there is no examination or cross-examination of the clerk on this point, and defendant moves for a judgment of acquittal, should the motion be granted? We think not. In this circumstance, where what is involved, while an element of the offense, has not been deemed important enough in the particular case to make any effort to elicit facts, we see no unfairness in allowing the government to

go to the jury on the issue, relying on the presumption of regularity. Morissette v. United States, supra, is not persuasive to the contrary, for there the presumption in effect compelled a finding of criminal intent, the key issue in the case.

■ Here the presumption of regularity stems, we think, not so much from the general proven efficiency of local draft boards as it does from the unworkability of requiring detailed affirmative proof that no registrant exists in the area served by a board who should have been called earlier than defendant. Since even *Lybrand* acknowledges that the government, when called upon so to do, can meet its burden by testimony of the clerk that a defendant was called in proper order, it seems to us that a defendant who has not chosen to raise the issue before or during the presentation of evidence is not being placed in a significantly less advantageous position by a presumption of regularity. It follows that this defendant, who raises the order of call point for the first time on appeal, should fare no better.

■ Defendant also complains that the district court erred in admitting defendant's selective service file in evidence and in admitting certain testimony that was based solely on this file. The file was offered through the Deputy Director of Selective Service for Massachusetts who testified without objection that it was an official government record; that he was the custodian and that the material contained in the file was made and kept in the ordinary course of the Selective Service business. Defendant asserts that the jurisdiction of this witness is limited to Massachusetts, whereas his file was maintained in

---

8. We grant that this case is somewhat unusual, in that the records were those of a local board in another state. But the whole scheme set forth in 32 C.F.R. § 1631.7 requires local boards to keep records of delinquents and their dates of birth, volunteers and their dates of volunteering, and nonvolunteers and their dates of birth, marital status, and dates of marriage. In most cases we suspect that properly authenticated records of such information will prove sufficient. Should there be an issue which can be resolved only by testimony and cross-examination, we see no alternative to a deposition or attendance of the clerk or other appropriate official at trial.

South Carolina; therefore the witness could not properly authenticate the file. This contention lacks merit. Under the Selective Service Regulations 32 C.F.R. § 1606.35(a) any officer or employee of the Selective Service System who produces the records of a registrant in court is considered the custodian of such records. Defendant argues that this section does not apply unless such officer or employee produces the records in response to a subpoena. It would be frivolous to suggest that the government is obliged to subpoena its own records.

Nor is the defendant harmed by the procedure invoked here. In essence defendant's objection is that "the custodian" who produced the defendant's selective service records was ignorant as to the substance of their content. A custodian of records is not obliged to possess personal knowledge of the content of the file. He need only authenticate its source.

Affirmed.