**UNITED STATES of America,
Appellee,**

v.

**Larry Nolan DOBIE, Appellant.**

**No. 14236.**

United States Court of Appeals,
Fourth Circuit.

Argued May 3, 1971.

Decided June 28, 1971.

Marvin M. Karpatkin, New York City (Louis Ellenson, court-appointed counsel, and Ellenson & Fox, Newport News, Va., and Karpatkin, Ohrenstein & Karpatkin, New York City, on brief), for appellant.

Roger T. Williams, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., for Eastern Dist. of Virginia, on brief), for appellee.

Before BRYAN, WINTER, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

In an earlier opinion, United States v. Dobie, 429 F.2d 32 (4th Cir. 1970), this court vacated Larry Nolan Dobie's conviction for failing to report for induction and remanded the case to determine whether Dobie's local board illegally accelerated his induction order because he had been declared delinquent. We now hold that the government has failed to meet its burden of showing that Dobie's induction order was issued in the proper order of call.

In the fall of 1966, Dobie was enrolled as a junior at George Washington University in Washington, D. C. Through no fault of his own, the college reported him as a sophomore, and his local draft board, believing him not to be making satisfactory educational progress, denied him a student deferment. It classified him I–A on November 17, 1966, and notified him of his status on November 29.

Assuming the error to be the board's, Dobie wrote on December 2 requesting an explanation of his classification. The board's only reply was an order issued December 6 for him to report for a physical examination the following week. Dobie failed to report, and on December 16 the board wrote him that he was delinquent.

Three days after missing his physical examination, Dobie visited his local board headquarters to explain that he was still a student and that his education was proceeding at the proper pace. In addition, he told the clerk he was opposed to killing people, and she issued him an application for classification as a conscientious objector. He returned the form two days later without filling it in, but attached a fourteen page letter, which was for the most part a statement of his beliefs concerning the use of military force. The letter also explained that he failed to report for his physical examination chiefly because of his resentment at being denied deferment as a student. He wrote that he told the clerk he would have the college correct its administrative error upon his return to Washington, but that she nonetheless insisted he report for a physical examination. On January 3 the clerk

notified Dobie that the board's previous order to report for a physical examination was proper, and that he was being rescheduled for examination on January 19. The board received a corrected student certificate from the college on January 6, but it took no steps to change his classification.

Shortly before his second scheduled physical examination, Dobie notified the board that he was leaving school. He also wrote that again he would not report for his physical examination—this time, however, as an act of conscience. In early February, the board sent him a delinquency notice dated January 26, 1967 for his failure to report for his physical examination on December 13. As instructed in the notice, he wrote the board immediately for advice about what he should do. Again the board did not respond to his letter. Instead, it simply ordered Dobie to report for induction as a delinquent on March 7.[1] Dobie did not appear on the appointed day, and his indictment, prosecution, and conviction followed.

■ In Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), the Supreme Court held that while the Military Selective Service

Act of 1967[2] provided for the criminal prosecution of delinquent selective service registrants, it did not authorize the regulations providing for accelerated induction. Since Dobie's induction order was issued while the acceleration regulations were still in effect, the government has the burden of proving that Dobie's local board did not accelerate him.[3] The sole question in this appeal, therefore, is whether the government has met its burden of proof.

The government does not contend that Dobie's local board did not follow the Selective Service regulations that authorized his accelerated induction as a delinquent.[4] Instead, it claims that by happenstance there was no one in March 1967 who would otherwise have been called ahead of Dobie. To establish this coincidence, the government offered delivery lists of inductees for the months of February and March 1967, and the testimony of the clerk of Dobie's local board that he would have been ordered for induction in February instead of March if he had reported for his December physical examination. The government points to dictum in Yates v. United States, 404 F.2d 462, 465 (1st Cir.), reh. denied, 407 F.2d 50, cert. denied 395 U.

1. On February 22, 1967, Dobie wrote another letter offering to serve in a civilian capacity or to surrender himself for arrest. The clerk of the board responded to this letter explaining that Dobie was not entitled to a civilian assignment and that he should report for induction.

2. Formerly the Universal Military Training & Service Act, 50 U.S.C.App. §§ 451–73.

3. United States v. Dobie, 429 F.2d 32, 33 (4th Cir. 1970); accord, United States v. Pennington, 439 F.2d 145 (9th Cir. 1971).

   In other cases which have come to our attention, the federal courts of appeal have reversed the convictions of delinquents who failed to report for induction either because the record affirmatively shows acceleration, United States v. Troutman, 425 F.2d 261 (8th Cir. 1970); United States v. Zmuda, 423 F.2d 757 (3rd Cir.), cert. denied, 398 U.S. 960, 90 S.Ct. 2176, 26 L.Ed.2d 545 (1970) (government concession); or because it was as-

sumed in the absence of evidence to the contrary that, in view of the regulations, acceleration did occur, United States v. Townsend, 431 F.2d 702 (9th Cir. 1970); Gilchrist v. United States, 430 F.2d 631 (10th Cir. 1970); United States v. Supina, 428 F.2d 1226 (9th Cir. 1970); Battiste v. United States, 428 F.2d 801 (5th Cir. 1970); United States v. Stow, 427 F.2d 891 (9th Cir. 1970); United States v. Broyles, 427 F.2d 358 (9th Cir. 1970); United States v. Thomas, 422 F.2d 1327 (9th Cir. 1970); Gregory v. United States, 422 F.2d 1323 (9th Cir. 1970); United States v. Dyer, 421 F.2d 1332 (10th Cir. 1970).

4. The order of call regulation, 32 C.F.R. § 1631.7, no longer requires acceleration of delinquents. Classification and handling of delinquents appears in 32 C.F.R. Part 1642. For a discussion of the now deleted acceleration provisions, see Gutknecht v. United States, 396 U.S. 295, 297–299, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970).

S. 925, 89 S.Ct. 1781, 23 L.Ed.2d 242 (1969), which indicates that in some circumstances a clerk's testimony is sufficient to show that the proper order of call had been followed.

■ *Yates* held that an indictment need not allege that a registrant was called in proper order, and that the presumption of regularity which attaches to a draft board's proceedings precludes a registrant from questioning the order of call for the first time on appeal. We find no difficulty in accepting the *Yates* holding, but the government's reliance on its dictum is totally misplaced. *Yates* dealt with a standard order of call, not the illegal acceleration of a delinquent. The presumption of regularity to which *Yates* refers means only that in the absence of evidence to the contrary a draft board is deemed to have called its registrants in the order specified in the regulations.[5] Prior to *Gutknecht*, however, the regulations required that delinquents be called first. In this case, therefore, the government cannot rely on the presumption of regularity to show that Dobie was not accelerated, and we must look instead to the proof available to the government and to the proof actually presented to determine whether the government has carried its burden.

First, we note that the written records of a draft board can establish conclusively whether or not a registrant has been accelerated. Each local board must maintain a file known as the "102 book" listing in order of birth all registrants born in the same year. 32 C.F.R. § 1621.6. Production of the 102 book would have shown immediately whether there were registrants older than Dobie who were not called ahead of him. Once the older registrants were identified, their classifications could have been checked to determine whether they were in a deferred status on the date he was called. See United States v. Weintraub, 429 F.2d 658, 660 (2d Cir. 1970), cert. denied, 400 U.S. 1014, 91 S.Ct. 572, 27 L.Ed.2d 627 (1971). The government, however, did not produce the local board's 102 book.

. Another source of information is the monthly delivery lists by which inductees are forwarded to the induction center. 32 C.F.R. § 1632.5. Each registrant ordered inducted is listed by name and draft number. The draft number contains a code for the year of the registrant's birth. An inspection of delivery lists for the month Dobie was ordered inducted and for the next several months would show who, among those called at the same time or afterwards, was older than Dobie. A check of the records of these men would immediately establish whether any was subject to call the month Dobie's induction order was issued. The government produced the March list, which in itself is inconclusive, but did not produce any subsequent list.

Even if the 102 book and the delivery lists showed that Dobie was not called out of turn, they would not establish that he was called at the appropriate time. Again the procedure for determining whether the call was proper is simple. Each month the local boards receive a notice of call ordering them to deliver for induction the number of men requested by the state director. 32 C.F.R. § 1631.6. Thus, a comparison of the notice of call and the delivery list for a given month will show whether the local board exceeded its quota for that month, and whether a delinquent registrant was included in the excess. The government did not produce the March notice of call.

The delivery list for February 1967, the month before Dobie's call, shows that his local board called three registrants, two younger than Dobie and one older. Because younger men were called, the clerk testified that if Dobie had reported for examination in December as ordered, he would have been inducted in February. The clerk's opinion presupposes without foundation that Dobie would have stop-

---

5. In *Yates*, the clerk did not testify, and we assume the court in its hypothetical case—a registrant challenging the standard order of call at trial—referred to testimony substantiated by the records of the local board to establish the presumption of regularity. 404 F.2d at 466 n. 8.

ped college even if he had not been notified of his imminent induction as a delinquent.[6]

The clerk's speculation about what would have happened if Dobie had reported in December is an insufficient basis to sustain his conviction. Contrary to her conclusion, it is equally probable that if Dobie had reported in December, he would not have been called for induction in February. Had he reported, he would not have been considered delinquent, and his II–S status might have been promptly reinstated when the board received a corrected certificate from George Washington University on January 6, 1967.[7]

The February delivery list and the clerk's testimony based on it is of little significance for another reason. Dobie was never ordered to report for induction in February, and he was not prosecuted for failing to report at that time. He was indicted for failure to report as ordered in March, and it is his standing relative to the other registrants of his local board in March which is crucial.

At the time Dobie was called, the regulations provided that a delinquent should be called before all other registrants, including volunteers. 32 C.F.R. § 1361.7. Since Dobie was called with two volunteers, there is nobody on the March list whose age can be compared with Dobie's. The March list, therefore, does not support the government's contention that Dobie's induction was not accelerated. Indeed, the March list itself provides evidence that his induction was accelerated. An entry on the form indicates that Dobie's board was required to call two men to meet its quota. The board, nevertheless, ordered three men—Dobie and the two volunteers—to report for induction. Apart from the invalid delinquency regulations, the volunteers should have been inducted prior to Dobie, and they would have satisfied the board's call. The delivery list, therefore, indicates that Dobie's induction exceeded the board's March quota, which, of course, is evidence that he was accelerated.[8]

Dobie's draft file contains additional documentary evidence indicating that he was accelerated. The board's letter of December 16, 1966 and its delinquency notice of January 26, 1967 both refer to his immediate induction. His order to report for induction dated February 20, 1967 refers to him as delinquent, and on the March delivery list he was described as: "Delivered for immediate induction as a delinquent registrant."

To disprove Dobie's acceleration, the government should have produced objec-

---

**6.** In advising the board that he had dropped out of college, Dobie wrote on January 15, 1967:

"I am no longer a student, for I have dropped out of college. I trust we can finish this matter of servitude quickly and quietly. The sooner the better, for I would someday like to live my own life, be a free man."

**7.** See Gutknecht v. United States, 396 U.S. 295, 313, 90 S.Ct. 506, 514, 24 L.Ed.2d 532 (1970), Mr. Justice Harlan, concurring:

"I join the Court's opinion with the following observations. First, as I see it, nothing in the Court's opinion prevents a selective service board, under the present statute and existing regulations, from classifying as I–A a registrant who fails to provide his board with information essential to the determination of whether he qualifies for a requested exemption or deferment.

Section 162.10 of 32 C.F.R. provides that: 'In Class I–A shall be placed every registrant who has failed to establish to the satisfaction of the local board, subject to appeal hereinafter provided, that he is eligible for classification in another class.' *I assume, of course, that under this regulation a board has no authority to keep a registrant classified I–A once it has information that justifies some lower classification.*" [Emphasis added].

**8.** The March delivery list contains these notations:

"Number called for      2"
"Number listed from this board  3"

The number of men called could have been proved conclusively by the notice of call issued by the state director. The government did not introduce this record, and we assume, therefore, the notations on the delivery list are correct.

tive evidence of a more substantial nature than the opinion of the clerk. This is especially true when the records on their face indicate acceleration and the government has in its possession other documents which could have established whether he had been called in the proper order.

The judgment is reversed.