UNITED STATES of America,
Plaintiff-Appellee,

v.

Martin C. WEBB, Jr., Defendant-Appellant.

No. 71-1714.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 30, 1972.

Decided Oct. 16, 1972.

Frank W. Oliver, Richard Allen Halprin, Chicago, for defendant-appellant.

James R. Thompson, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and CUMMINGS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

Martin Webb was convicted by a jury of willfully and knowingly refusing to submit to induction into the armed forces of the United States in violation of 50 U.S.C. App. § 462. He appeals on the ground that the government's only evidence of the offense, a letter mailed to the United States Attorney's Office stating that Webb had refused induction, was insufficient proof upon which to base a criminal conviction. We reverse and remand for a new trial.

The facts underlying the alleged violation are in dispute. Webb reported for induction as ordered on January 26, 1970, and proceeded through routine preliminary processing. At this point, Webb was apparently taken to the office of Lieutenant Colin Aldridge. Webb testified that he gave Lieutenant Aldridge a letter in which he expressed concern about possible criminal prosecution for war crimes and sought immunity from any prosecution. Lieutenant Aldridge, according to testimony, became upset and told Webb that the penalty for refusing induction could be five years imprisonment. Webb testified that he told the lieutenant that he was not refusing induction and that Lieutenant Aldridge then left the room, returning a few minutes later with Captain James Ohlson. Captain Ohlson reportedly asked Webb about the document and whether Webb intended to submit to induction. Webb insists that he stated he did so intend. Some discussion followed but apparently Captain Ohlson eventually took Webb to the Colonel in charge. Webb testified that the Colonel told him he could not sign the document and could not discuss it until Webb was formally inducted into the Army. The Colonel then left and Captain Ohlson, Lieutenant Aldridge and Webb returned to the ceremony room. Webb again asked Captain Ohlson to sign, or at least to read, the document he had brought to the induction center. Lieutenant Aldridge repeated his warning that the penalty for refusing induction was five years imprisonment. Webb said he told them again that he was not refusing but that Captain Ohlson said that Lieutenant Aldridge had stated that he had refused. Captain Ohlson then called the F.B.I.

Webb insists that as a result of the confusion, although the ceremony was explained to him, it was never begun and he was never given an opportunity to take the symbolic step forward. Webb also testified that he at no time intended to refuse induction and never told anyone at the induction center that he would refuse induction.

The government offered no testimony to contradict this version of the facts, relying instead on a letter, purportedly written by Captain Ohlson,[1] sent to the U.S. Attorney's Office in which the writer stated that Webb had refused to submit to induction. According to this letter, Webb had been given two opportunities to submit but refused each time. The letter also stated that Lieutenant Aldridge and two other named Army personnel were witnesses to the refusal. A short memorandum bearing the typewritten signature of Lieutenant Aldridge was attached in which Lieutenant Aldridge stated that Webb had refused induction.

The government argues that the letter and memorandum provided sufficient proof to justify a conviction for refusing to submit to induction under the Business Records and Government Records Act exceptions to the hearsay rule.[2] The government relies on decisions of this court, particularly United States v. Van Hook, 284 F.2d 489 (7th Cir.), remanded for resentencing, 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821 (1961).

1. The letter bore the typewritten signature of Captain Ohlson.

2. 28 U.S.C. § 1732 and § 1733.

■ This reliance is misplaced. Although the documents may have been admissible in evidence under exceptions to the hearsay rule, this circuit has never countenanced a construction of the Government Records Act which would allow the government to establish the *corpus delicti* in a criminal case solely on the basis of unverified and contradicted statements contained in written memoranda. In *Van Hook*, in addition to a letter to the U.S. Attorney's office detailing the alleged refusal, the evidence included testimony by an agent from the Federal Bureau of Investigation that the defendant had admitted to refusing to submit to induction on the morning in question. 284 F.2d at 492. In United States v. Rogers, 454 F.2d 601, 604 (7th Cir. 1971), also relied upon by the government, this court was careful to note that the civilian employer's statement that the defendant had failed to report was not the only evidence offered to prove the *corpus delicti*. In that case the defendant had written his local board that he was unable to accept the job offered him. The court noted that the written statement by the defendant, like a comparable letter written by the defendant in United States v. Holmes, 387 F.2d 781, 783 (7th Cir.), cert. denied, 391 U.S. 936, 88 S.Ct. 1835, 20 L.Ed.2d 856 (1968), constituted an admission that he had failed to report on the critical date. The evidence in Rhyne v. United States, 407 F.2d 657, 660 (7th Cir. 1969), included, in addition to a letter written to the U.S. Attorney by Selective Service officials, a witnessed statement of refusal to submit to induction signed by the defendant.

The question of the sufficiency of evidence to establish the *corpus delicti* beyond a reasonable doubt was apparently not raised in United States v. Harris, 446 F.2d 129 (7th Cir. 1971). That case merely reaffirmed the admissibility of a selective service file in the face of the Sixth Amendment right to confrontation. Even so, the court limited its holding to a statement that the file was sufficient to establish a prima facie case of refusal to report for civilian work, noting that "[h]ad there been any evidence offered at the trial which tended to contradict the selective service file's representation that Mr. Harris had failed to report, we would be alarmed about his demand for the right to confront the witness on this issue." 446 F.2d at 131.[3]

No admissions are in evidence in the present case. The evidence in the record before us, consisting solely in two written statements by Selective Service officials, is insufficient proof upon which to sustain Webb's conviction.[4]

■ Since this case must be remanded for a new trial we think it appropriate to correct an additional error made by the trial court. Over objection, the trial judge instructed the jury that if it believed that "the defendant deliberately engaged in conduct that he knew would

---

3. The court in *Harris* did not discuss, and apparently was not presented with, a claim that there was any impermissible burden under the Fifth Amendment imposed upon the defendant by reason of a failure to offer any contradiction of the government's evidence.

   The opinion in United States v. Lyzun, 444 F.2d 1043, 1046 (7th Cir. 1971), merely stated that the government's case had been proved by letters and entries in the board file. The court's citation of *Holmes, supra,* indicates that the papers may have included written admissions by the defendant.

4. The government argues that the document brought to the induction center by

the defendant constituted an "admission" that Webb intended to refuse induction. The record does not support this contention. On the contrary, the final paragraph of the document in question would seem to support Webb's statement that he did intend to submit to induction. The paragraph states:

   "Should the Chief of the Armed Forces Entrance and Examining Station refuse to sign this instrument, inductee expresses the hope that he will appear as a witness in inductee's behalf should inductee, as a result of being a member of the Armed Forces of the United States, find himself charged with the commission of a war crime. . . ."

make induction impossible, then he is properly charged with refusal to submit to induction." In giving this instruction, the trial judge told the jury that while the symbolic step forward was the usual and customary procedure by which an inductee is asked to recognize that he is no longer a civilian, it is not the only way such recognition of change of status can be accomplished, and that it could find that the defendant had never been requested to take the symbolic step forward and still find him guilty under the above instruction. We recognize that there may be instances when a defendant's aggressive conduct could make even the formal attempt at ceremony impossible. There was no evidence from which such a conclusion could be reached here, however. The trial judge's instruction was therefore inappropriate in view of Army Regulation 601–270, paragraph 3–31c(1), which provides:

"Any registrant who has been removed from the group as prescribed in paragraph 3–22b and who persists in his refusal to submit to induction will be informed that such refusal constitutes a felony under the provisions of the Military Selective Service Act of 1967. He will be informed further that conviction of such an offense under civil proceedings will subject him to be punished by imprisonment for not more than 5 years, or a fine of not more than $10,000, or both. He will then be informed again of the imminence of induction, using the language specified in paragraph 3–22a, and his name and service again will be called. If he steps forward at this time, he will be informed that he is a member of the Armed Forces concerned, using the language specified in paragraph 3–22c."

Identical language in a predecessor regulation was held in Chernekoff v. United States, 219 F.2d 721, 725 (9th Cir. 1955), to be a mandatory regulation which had to be followed by the inducting officers. The court said:

"The Army deemed it useless to apply the Special Regulation to the appellant as he had said he would not if asked to so do step forward and become inducted into the Armed Forces. It does not matter that he might not have changed his mind. He should have been given the opportunity granted him by the Army's own regulation to seriously reflect and to let actions speak louder than words. In Corrigan v. Secretary of Army, 9 Cir., 1954, 211 F.2d 293, the court stated it is highly important that the moment a selectee becomes subject to military authority be marked with certainty. It is also important that the moment he becomes liable for civil prosecution be marked with certainty. The Special Regulation fulfills such a need.

.   .   .

"The appellant could well have changed his mind and complied with the 'step forward' procedure had the Special Regulation been followed or 'stood in his tracks' if he desired to adhere to his former statement. The ceremony is designed to bring about a definite responsive course of conduct by the selectee marking his separation from his civil status. This ceremony must be conformed to unless the selectee himself makes it impossible,
.   .   ."

The *Chernekoff* decision was approved by implication in United States v. Van Hook, 284 F.2d 489, 494 (7th Cir. 1960). We think its reasoning is applicable to the instant case and, without a greater showing that the defendant's conduct made the ceremony impossible,[5] the trial court's instruction was improper.

Reversed and remanded for a new trial.

---

5. See Callison v. United States, 413 F.2d 133, 135 (9th Cir. 1969); United States v. Meyers, 410 F.2d 693, 695 (2d Cir. 1969).