UNITED STATES of America, Plaintiff-Appellee,

v.

Wilfred Henry SORRELL, Defendant-Appellant.

No. 72–1232.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1972.

Decided Jan. 17, 1973.

"A. No.

"A. Yeah.

Bryan Borman, Milwaukee, Wis., for defendant-appellant.

David J. Cannon, U. S. Atty., Terry E. Mitchell, D. Jeffrey Hirschberg, Asst. U. S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Before FAIRCHILD, PELL and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The defendant, Wilfred Henry Sorrell, was charged in a single-count indictment with wilfully failing and refusing to comply with an order to report for induction into the Armed Forces "in that he refused to comply with instructions, rules and procedures prescribed for registrant processing," in violation of 50 U.S.C. App. § 462. Trial was held before the court and defendant was found guilty on September 22, 1971. Numerous alleged errors are raised in this appeal, two of which will be discussed. We conclude that Sorrell's conviction must be reversed.

I

Defendant argues that the indictment under which he was convicted was so vague that it failed to give him reasonable notice of the acts constituting the offense for which he was charged. The indictment was framed in language similar to that contained in the statute, which provides in part that "any person . . . who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title, . . . or rules, regulations, or directions made pursuant to this title . . ." shall be guilty of an offense punishable by imprisonment for not more than five years and a maximum fine of $10,000. 50 U.S.C. App. § 462. Specifically, the indictment charged that the defendant, on or about October 9, 1969, in the city of Milwaukee,

"did knowingly, wilfully and unlawfully fail to perform a duty resting upon him under the Military Selective Service Act of 1967 and the Regulations in that, having been classified as I–A, he did wilfully fail and refuse to comply with an Order to Report for Induction in that he refused to comply with instructions, rules and procedures prescribed for registrant processing at the Armed Forces Examining and Entrance Station, 341 North Milwaukee Street, Milwaukee, Wiscon-

sin, as required by SSS Form No. 252, Order To Report For Induction; all in violation of Section 462, Title 50 Appendix, United States Code of Laws."

Sorrell insists that it is impossible to determine from the indictment what particular instructions, rules or procedures he was charged with violating. The rules and regulations for registrant processing at the Armed Forces Examining and Entrance Station, found in Army Regulation, AR 601–270, are lengthy and detailed. Rule 7(c), Fed. Rules Crim.Proc., requires that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Although "the language of the statute may be used in the general description of an offense, . . . it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." Russell v. United States, 369 U.S. 749, 765, 82 S.Ct. 1038, 1048, 8 L.Ed.2d 240 (1962); United States v. Hess, 124 U.S. 483, 487, 8 S.Ct. 571, 31 L.Ed. 516 (1888).

A similar indictment was held in United States v. Farinas, 299 F.Supp. 852, 854 (S.D.N.Y.1969), to be fatally defective, the court finding that the indictment fell "below the minimum standard of specificity in respect of the requirement of reasonable notice." The district judge in the present case attempted to distinguish *Farinas* on the ground that the indictment under attack here charged the defendant not only with refusing to perform some unspecified duty but also with wilfully failing to comply with an order to report for induction in so refusing to comply with instructions, rules and procedures at the Examining Station. We fail to see any distinction. The indictment did not charge the defendant with failing to report for induction; it charged him with failing to obey rules and regulations at the examining station. We conclude that the indictment failed to apprise the defendant of the charges against which he had to defend with reasonable certainty. Defendant's motion to dismiss the indictment should therefore have been granted.

## II

We believe that Sorrell's conviction would have to be reversed, even in the absence of the faulty indictment, on grounds that the government presented insufficient evidence of guilt of the offense charged. The evidence introduced by the government consisted in Sorrell's Selective Service File and the testimony of Thomas N. Key, Assistant Processing Officer at the Milwaukee Examining Station, to which the defendant reported for induction.

Items 30 and 31 of the Selective Service File are, respectively, a form entitled "Report of Medical History" and a form entitled "Report of Medical Examination." Each form bears the type-written date April 17, 1969. On the back of the first form is the written statement "refuses to give medical history," along with the signature of a Marc Erickson. The same signature appears on the second form, accompanying the statement that the defendant refuses to submit to a physical examination. This form bears a second notation, "Refuses to have A & P," together with what appear to be the initials "TR." There is also a stamp stating that no disqualifying defects or communicable diseases were noted on October 9, 1969. The government did not call Captain Erickson as a witness.

The only additional documentary evidence submitted on this issue was a letter from Lieutenant Key to the Dane County Transfer Board, Selective Service System, Madison, Wisconsin, dated October 10, 1969, stating that the defendant on October 9, 1969, "refused to comply with instructions, rules and procedures prescribed for registrant processing; individual refused to take part in all processing."

It is readily apparent that, with the possible exception of the fact that Lieutenant Key testified at the trial, the evidence in this case is as inadequate as the documentary evidence held insufficient in our recent decision in United States v. Webb, 467 F.2d 1041 (7th Cir. 1972). The evidence in that case consisted in a letter sent to the United States Attorney stating that the named defendant had refused to submit to induction. The documentary evidence in the instant case consists in a letter written by Lieutenant Key stating that the defendant had refused to follow all the rules necessary for processing, plus notations on two medical forms, all but one of which bear a date different from the October 9, 1969, date on which the alleged violations occurred. The only notation bearing the appropriate date states that no physical defects were observed and bears no signature at all, unless the letters "TR" were so intended. There was, therefore, simply no reliable evidence of sufficient probative value upon which to base Sorrell's conviction.

The government argues, however, that this case is distinguishable from *Webb* because the writer of the letter stating that the defendant had refused to comply with registration procedures, Lieutenant Key, testified at trial. The record does not support this contention. Key testified that while a letter such as the one mailed under his name would have been sent if a registrant "refused to cooperate with the procedure set forth by the Induction Center," he had no recollection of whether he had ever seen the defendant before and had no personal knowledge of whether the infractions set forth in the letter had in fact occurred.

We conclude that Sorrell's conviction was based on insufficient probative evidence and that the indictment under which he was charged was so vague that it failed to reasonably apprise him of the charges against which he was required to defend.

Reversed.

PELL, Circuit Judge (dissenting).

Finding myself in disagreement with the result reached by the majority, as well as the route taken to that destination, I respectfully dissent. I would affirm the judgment of the district court.

In stating my dissent, I address myself only to the two points relied upon in the majority opinion. I am not unmindful of the multifariousness of the issues raised on this appeal by counsel for the defendant. This situation existed at the trial, prompting the district judge to observe at the time of announcing his decision that dispensing with briefs should not suggest that the attorneys had "not been inventive and assiduous in their examination of this record, in presenting various claimed flaws in the government's case. . . ." The shotgun remained fully loaded on this appeal with an even dozen issue-reasons being advanced for reversal. For the present purposes, it is sufficient to say that I have examined the other ten issues raised and find them to be without merit.

A proper test for determining the sufficiency of the indictment is set forth, in my opinion, in United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 114, 98 L.Ed. 92 (1953), in which the Court stated:

"An indictment is required to set forth the elements of the offense sought to be charged.

"The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Cochran and Sayre v. United States, 157 U.S. 286, 290, [15 S.Ct. 628, 630, 39 L.Ed. 704];

Rosen v. United States, 161 U.S. 29, 34, [16 S.Ct. 434, 40 L.Ed. 606].' Hagner v. United States, 285 U.S. 427, 431, [52 S.Ct. 417, 419, 76 L. Ed. 861].

"The Federal Rules of Criminal Procedure were designed to eliminate technicalities in criminal pleading and are to be construed to secure simplicity in procedure. Rule 2, F.R.Crim. Proc. Rule 7(c) provides in pertinent part as follows:

> 'The indictment . . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . . It need not contain . . . any other matter not necessary to such statement. . . .' "

The indictment under consideration did not give a minute-by-minute, blow-by-blow accounting of what Sorrell did or did not do while at the induction station to which he had been ordered to report for military service by his selective service board pursuant to his having been classified 1–A. Such is not required. In my opinion, Sorrell was more than sufficiently apprised of what he must be prepared to meet in his defense. He was notified of the charges that (a) he, on a specific day, knowingly, willfully and unlawfully failed to perform a duty under a specified United States statute and its Regulations; (b) his classification was 1–A; and (c) specifically he failed and refused to report for induction "in that" he refused to comply with the Examining and Entrance Station prescribed instructions, rules and procedures for registrant processing. These rules, as is pointed out in the majority opinion, are found in Army Regulation AR 601–270. They, therefore, are not guidelines developed or imposed at the whim or caprice of an examining officer or even of a particular station. While it is true, as the majority opinion also states, that these rules are lengthy and detailed, most of the rules pertain to the duties placed upon the military personnel. I find rather ri-diculous the argument of the defendant that the defendant was in effect charged with violating all of the rules, including those pertaining to military personnel. I cannot conceive that counsel in their vigorous presentation of Sorrell's case were concerned that he might have to meet a charge of violating a procedural duty placed solely on military personnel. He could scarcely fail to perform a duty which did not legally or otherwise rest upon him. *Cf.* Yates v. United States, 404 F.2d 462, 464 (1st Cir. 1968), cert. denied, 395 U.S. 925, 89 S.Ct. 1781, 23 L.Ed.2d 242 (1969).

After narrowing the fair meaning of the indictment to those duties prescribed by the rules as resting upon an inductee in process, it appears to me that Sorrell could not but have been aware of that of which he was charged with noncompliance, particularly since the noncompliance was cast squarely in the context of refusing to report for induction. It is for this reason that Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L. Ed.2d 240 (1962), upon which defendant relies, is not applicable here. As pointed out by the First Circuit in *Yates, supra* at 464, in which a selective service indictment was involved and in which the defendant also relied on *Russell*, the proposition in *Russell* that, in addition to setting out the elements of the offense charged, the indictment must allege specifics, must be read in relation to the indictment's primary goal —that the defendant be apprised with reasonable certainty of the nature of the charge against him. As the *Yates* court further pointed out, the proposition must also be read in the light of the facts of *Russell*, a case concerning refusal to answer questions of a congressional committee, where the "lack of explicitness went to the very core of a very complex factual situation. . . ." 404 F.2d at 464. Just as the *Yates* court found the case before it not of the *Russell* type, I think this court should do likewise in the present case.

The majority opinion, as does the Sorrell brief, relies heavily on the case of

United States v. Farinas, 299 F.Supp. 852 (S.D.N.Y.1969). Aside from the fact that *Farinas* is a non-appealed district court case, I find it no real authority for the case under consideration. The crux of the *Farinas* decision was that the indictment did not meet the minimum standard of specificity because it charged the defendant with refusal to obey "orders" which were not limited to orders related to the induction process. Since the violation charged in the case before us is equated only with rules applicable to an inductee, I find no persuasive authority in *Farinas.* Here, paraphrasing the words of the district court in *Farinas* and contrasted to that case, there was no "failure to specify the nature of the [rules] allegedly disobeyed" as the nature of those rules was definitively circumscribed by Army Regulations. In *Farinas,* an oral order by an examining soldier having nothing to do with the induction process could fairly be said to be within the "orders" involved in that case.

With regard to the second point, while it can scarcely be claimed that this was a case of a multitude of bishops swearing that Sorrell refused to comply with every rule of the induction station, I cannot agree that a probative case was not made. The defendant's selective service file introduced into evidence contained a clear statement in a letter that Sorrell "refused to take part in all processing." While United States v. Webb, 467 F.2d 1041 (7th Cir. 1972), casts doubt on whether this letter standing alone would be sufficient for conviction, it does not stand alone. The signer of the letter testified.

I cannot agree with the majority analysis of his testimony. As I read it, and I do not feel it is a semantical distinction, Lieutenant Key at first had no witness stand recollection, as opposed to "no personal knowledge," of whether the infractions in the letter had in fact occurred. Since he saw some 240 inductees a day, it is not surprising that he had no initial recollection more than two years later of the defendant or the infractions stated in the letter signed by him. This, of course, is not saying that he did not on the day he signed the letter. Nor, in the climate of today, is it particularly surprising that he would not remember a particular inductee who declined to complete the process.

Specifically, the testimony of Key reflects the following: His recollection was refreshed as to the events described therein and the letter was "written the day after Mr. Sorrell was in the Induction Station, sent back to the Local Draft Board." He made that letter during the performance of his "ordinary duties as Assistant Processing Officer." "This letter would have been sent in the event the registrant had come into the Induction Center for processing physical-mental examination and had refused to cooperate with the procedure set forth by the Induction Center." Key then testified to what the further procedure would be, which was that one of three officers would talk to the registrant and advise him of the possible consequences.

On cross-examination, Key testified that his memory was refreshed as to sending the letter by looking at it. Also, the following appears in cross-examination:

"Q All right. Now, to the best of your recollection, from refreshing your recollection from document number 16 [the letter], the Defendant did report to the Induction Station in Milwaukee; is that right? And as ordered in the—with the Selective Service document 253?

"A That's correct."

Finally, we find this in Key's redirect examination:

"Q Was it your testimony on cross examination that you would not have written that letter if the facts described therein were not true?

"A That is correct."

It is not surprising in view of cases such as this one that the induction centers have resorted to the "one step forward" procedure. It seems they might be well advised also to utilize a movie camera equipped with sound equipment.

The testimony of Lieutenant Key indicates to me the applicability of one of the rules of the proposed Federal Rules of Evidence, transmitted by the Supreme Court to the United States Congress on November 20, 1972. 56 F.R.D. 183.

Rule 406 (56 F.R.D. 223) reads as follows:

*"Rule 406. Habit; Routine Practice*

"(a) *Admissibility.*—Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

"(b) *Method of proof.*—Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine."

In the present case, there was uncontradicted evidence of a "routine practice of an organization" and, "regardless of the presence of eyewitnesses," although here it appears that the eyewitness did have his recollection refreshed, the evidence would appear to be "relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

We are living in a country with more than 200 million other persons. Hopefully, the characteristic of independent individuality which gave strength to the nation will not be lost. Nevertheless, the process of living and communicating with each other in ever greater numbers has tended to blur personal relationships. The computerized number has replaced the name.

The above quoted Rule 406 exemplifies, as I think it should, a healthy and necessary adaptation of judicial procedures to the complexities of modern society. That adaptation should not be such as to thwart justice to any individual but, with that restriction, it should provide procedures in keeping with the way people conduct their affairs.

Therefore, although the Federal Rules of Evidence will not become effective in any event until July 1, 1973, the present situation is one which I think calls for the application of the above-quoted rule.

There would be therefore in my opinion more than sufficient evidence to support a conviction under the indictment in question.

In sum, the Government proved sufficiently, even though not overabundantly, that Sorrell did go to the induction station in Milwaukee on October 9, 1969, and did there refuse to engage in any of the rule-prescribed procedures for inductees. Unfortunately, the result which has been reached here is that another individual who has willfully refused to enter military service although ordered to do so by his selective service board is spared the penalties of the law which he has flouted.

For the reasons hereinbefore set out, I would affirm the judgment of the district court.